Good morning, may it please the Court, and the Council, and by the Government, my name is Kevin Ross, I represent Donald Scribner, Jr. The issue before the Court this morning is whether the District Court erred by concluding that there was not a reasonable probability that the outcome of the proceedings would have been different had Mr. Scribner received effective assistance of counsel. This is the second time that we're here on this case in regards to oral argument. The issue in regards to ineffective assistance of counsel, the first prong of Strickland regarding deficient performance has already been established and agreed to. That, to give some context to the Court, is based on the fact that counsel had advised Mr. Scribner prior to going to trial that if he went to trial, he would be looking at a guideline range of 37 to 46 months. Had he pled, he would be looking at a guideline range of 30 to 37 months. Having that information, Mr. Scribner proceeded to trial. The problem in the deficient performance was the fact that the trial counsel missed that Mr. Scribner would be qualified under the career offender provision of the guidelines. That increased his sentence, if he was convicted at trial, to 210 months to 240 months, a drastic increase that was missed in Mr. Scribner's decision of whether or not to go to trial. At the two evidentiary hearings, Mr. Scribner had, to the magistrate court at the first evidentiary hearing and then at the second evidentiary hearing at the district court level, concluded or told the court that that played a significant role. He was only looking at around a seven month difference in his case, so why not go to trial? When he went to trial, the first time the trial counsel noted that he was a career offender and his guidelines were actually 210 to 240 months was when the PSR came out. He went to sentencing and was received the low end of the guideline of 210 months. However, there was a plea agreement that was circulated to Mr. Scribner, which allowed him to have pled to count three, which was possession marijuana with intent to distribute. That plea agreement was also given to his two co-defendants. Those two co-defendants accepted that plea agreement and the district court accepted their plea at their rearrangement and they were sentenced. After everything was said and done, Mr. Scribner got 210 months. He, on his own, filed a 2255, alleging that ineffective assistance of counsel. This comes down to whether there's a reasonable probability that if he'd known the accurate guideline range, he would have pled instead of going to trial. It requires speculation about what he would have done. Wouldn't one factor in that analysis be how good of a defense you have? If so, he thought he had a good defense and in fact, because he was just there taking the place apart, and in fact he was acquitted on one count, which shows he wasn't one of these slam dunk cases for the government. Why shouldn't that factor into the analysis of whether he would have gone to trial or pled? Your Honor, I think that it does, but as he stated at the evidentiary, when he's looking at the amount of time, 210 months to 240 months, versus whether he would have pled to count three, would have gotten acceptance of responsibility, then his guideline range is dramatically reduced down to 151 to 188 months. He was going on the premise that he was only looking at 37 to 46 months. And I see that the difference between a guilty conviction by plea and a guilty conviction at trial is much greater if he'd known the range. But it can also cut the other way because the benefit of getting an acquittal is much, much greater under the way the guidelines actually were in this case, right? Because by pleading guilty, he was going to have to sign off on roughly 10 years, which is a lot to sign off on. So if he can get an acquittal, the benefit is huge given what the real guidelines were. Right, but as Mr. Scribner stated at the evidentiary hearing, he's been around the block. He knows what the risks are. And he stated at the evidentiary hearing that he would have never accepted going to trial, facing that much time, because based on his criminal history, he knows that he would not have gotten any lenient treatment. And so he was having to weigh the risks. And when he weighed those risks, the information that he had at the time to make that decision was only a 7-month difference. It's a huge disparity. But that comes to, that's the deficient performance part. The prejudice prong is what we're here to argue about. And the controlling factor of the prejudice prong is based on Loeffler and Cooper, Loeffler v. Cooper. The three prongs, one, that Mr. Scribner has to show that he would have accepted the plea that the district court would have also accepted his plea and his plea agreement, and three, that the sentence in his case would have been less than what he had received. Interestingly, at the first evidentiary hearing, the magistrate judge ... Well, do we really need to talk about the first evidentiary hearing? Because our court remanded for the district judge to conduct an evidentiary hearing. So why do we need to hear about the first evidentiary hearing? Well, I think it's interesting because it comes to the reasoning and the rationale of how you get, how the district court came to its decisions on the first, on the three prongs versus what the magistrate judge did. And here's the difference. Don't, aren't we guided, aren't we controlled by what the district judge found in the district judge hearing? Yes. And what I'm arguing for the fact is that the district court got it wrong because of the district court's reasoning. What permeated the reasoning of the district court was the fact that the district court found that Mr. Scribner, pre-trial, had always asserted his innocence. The trial counsel came in and gave information that was attorney-client information, but at this hearing it was brought out that Mr. Scribner believed he was innocent, and so therefore he went to trial. And so that affected the district court's decision in all three prongs of Lafleur. Because the district court concluded that because he doggedly had his innocence proclaimed to his trial counsel, but nowhere is it doggedly said by Mr. Scribner, that's a superlative of the district court, that's all based on the pre-trial assertions. So he would not have accepted the plea agreement because he proclaimed his innocence. The court then concluded that he would not have accepted the plea agreement because it didn't believe that Mr. Scribner would have been able to come into court and plead guilty because he had, what, always asserted his innocence. And then, therefore, you would not have a sentence that was less because he would have never accepted responsibility. So that line of reasoning permeates through the district court's decision. Okay. Well, the panel sent it back to the district court who had rejected the magistrate's determination saying, well, essentially you can't do that given that the credibility determinations were made by the magistrate judge. So the district judge does a do-over and on its own credibility determinations then, you know, denies the relief. So the point is it went back because he couldn't do that on the magistrate. He had to make his own credibility determinations. So my question is, I get your argument in terms of that, but how much of it is turning on the, quote, credibility determination the district court made in terms of the factors that you've mentioned as far as what he would have done, would have accepted the plea, et cetera? I mean, is that the nub? I mean, is it erroneous as a matter of law or because he had a hearing, heard Mr. Scribner, at that point he's not listening to what he would have told his lawyer, but actually the defendant on the stand, et cetera, and, you know, says, well, I don't think he would have accepted. I mean, how much of that is in the calculus that we have to consider? Your Honor, for me, the argument that I think in that regard is that the reason why, and I would argue as a matter of law. Well, let me put it this way. It was wrong. Let me just ask it this way. I'm not arguing. The panel sends it back and says, you can't reverse this where the credibility determination was made by Magistrate. Do over. Does it over? Does what the court says to do, and then this panel says, wrong again. Though you did what we said in terms of evaluating credibility on your own, but we're going to say that the credibility determinations that you made are based on an erroneous or anchored to errors of law such that we reversed you. Do you see where I'm going? I think I do, Your Honor. So the court, yes, it went back and had its own evidentiary hearing to make its own findings, but the conclusions that the district court makes, I would argue to the court, is erroneous as a matter of law. In Griffin v. United States, that's the case that I'm relying on here. It's a Sixth Circuit case, but the Sixth Circuit held that the defendant's repeated declarations of innocence did not prove he would not have accepted a guilty plea had he been properly advised of the sentencing exposure and that a, quote, defendant must be entitled to maintain his innocence throughout trial under the Fifth Amendment. Isn't Griffin a little different because that was all about, in court, claims of innocence? And so that's why it even talks about the right against self-incrimination and everything because, yeah, we, it's expected that if you're going to trial, you're not going to also say, I did it. I committed the crime. Here, the district court wasn't relying so much on what he said in court. There was, at trial or in other court hearings, it relied primarily on what he told his lawyer privately under the protection of attorney-client privilege. So isn't that somewhat different? No, I think that in looking at this, though, he still has a Fifth Amendment right to maintain that. Even in talking with his lawyer, those are privileged communications, and the district court now going back to open a bill to look at those conversations and say, ah, at that point, you know, you were claiming you were innocent. So, so sorry. What normally happens. But how, yeah, it doesn't implicate the right to self-incrimination. You can't incriminate yourself by talking to your lawyer because it's privileged. That's correct. But, but we're in the position now that you're going back and you're looking into that conversation, and you're, you're using that conversation to say that he would not have accepted a plea agreement. But what should a court, I mean, just generally speaking in these inquiries, we're, we're having to speculate, right? It's, it's, that's what we've, the task that courts have been given. Other than the defendant's own new, you know, statements now in this posture, what, what should courts look to? That's a very difficult question, because it does rely upon speculation. In this case, I would, I think what the court can rely on, because the district court concluded that Mr. Scribner would not have accepted the plea, correct? And that he would not, and that the district court would not have accepted his plea had he come in for the re-arraignment because he was proclaiming his innocence throughout the pretrial process and through trial. Just kind of to throw in there, you have the presumption of innocence that carries with the defendant through trial. But the district court doesn't afford Mr. Scribner those protections. And then when you come to Loeffler, in this particular case, Mr. Scribner testified at trial. In testifying at trial, he testified to what he did. The jury found him guilty of aiding and abetting. It went up on appeal. This court found that based on Mr. Scribner's testimony, that he was guilty and they affirmed the, the, the, the verdict by the jury. So with that, you look at the fact that he did admit and he had acknowledged of what he did. Now, in the record, um... But so you, it sounds like you're saying the only thing we can look at is what the defendant testifies to in the 2255. That a court can only, it's just, they can't look at, you know, what, what the attorney was told, the attorney's view of the case when it, when all this was going on, the strength of the government's case, none of those are relevant? I think that they are, they're relevant, but you look at the decision, the factors that the defendant had, Mr. Scribner had in making his decision. One is the fact, is look at the disparity of what his sentence would have been. Two, you look at what he did testify to because the district court said that he was not going to, um, admit the elements of the offense. And I argued to the court that he did, he did admit to those elements of the offense, but as a whole, the, the flaw of the reasoning is the district court going back pre-trial and saying, no, because you told your lawyer that you were innocent, you wouldn't have accepted. But at the, at the evidentiary hearing, he said, I would have accepted a plea agreement had I known what my sentencing exposure was. Isn't that a finding of fact by the judge that we review for clear error? I believe it is a finding of fact. No, wait, don't tell me you believe. Isn't it? It is a finding of fact. However, the reasoning that the court uses is a question of a matter of law and if it was done correctly, and I would argue that it is not. I see that my time is up. Thank you. Mr. Branch? May it please the court, Jonathan Bradshaw for the United States. The court's questions indicate that it clearly has a grasp of exactly the controlling standards of review. So I want to skip straight to Mr. Scribner's argument that somehow the district court is precluded as a matter of law from considering prior attestations of innocent intent. So I want to push on that in two ways. First, I want to push on it legally, and second, I want to push on it factually. So first, before you get into that, let me ask you, his argument, it does seem to me that the district court did sort of collapse everything into the first inquiry. It says, would he have pled guilty? Would he have come into court and said, yes, I did this, Judge, I want to plead guilty? But then he goes to step, the judge goes to step two, which is the question is would the court have accepted the agreement that was offered? And the judge says, well, I wouldn't have done that because he would have not really come clean. I mean, so it seems, and then he does the same thing in sentencing, I wouldn't have given him a more lenient sentence because he wouldn't have come clean. But it seems to me that's all really asking the first question. If the answer to the first question is different, yes, he would have come clean, then wouldn't the answers to the other two questions come out the other way? I agree with the court that the district court's reasoning dominoes from question one, question two, question three. So the district court said, because I find, as a matter of fact, that Mr. Scribner was unwilling to admit his guilty intent, then I would not have accepted this plea, and also he was not entitled to an acceptance of responsibility reduction. I would also ---- Everything seems to stand or fall on that first question. Not exactly. So the district court, if this Court could also affirm on the alternative finding on the first fact, which is the first factor that Mr. Scribner would have not accepted that plea. Sure, sure. But it seems to all stand on the first inquiry. Yes. However, you have two arguments on that. I do see that. That's right. Because, I mean, the way I look at the second, the Supreme Court actually frames the second question as would the judge have accepted the terms of the plea agreement, which to me is more a question of would the judge have thought this was too lenient or would he have thought it was fair. Not would he have been satisfied the person adequately accepted responsibility, but would the deal have been fair to the judge is the way I read that. And I agree with the court. That's the way I read Lafler as well, although I don't think that in setting out the test, Lafler precludes what the district court did here either. I just don't think it envisioned it one way or the other. So first of all, as I said, I wanted to push on it as a matter of law. So Mr. Scribner relies heavily on Griffin, and the key distinction with Griffin, it is a pre-hearing disposed of at the pleadings stage. So Mr. Griffin files a post-conviction motion there. The district court denies it without having an evidentiary hearing and says, as a matter of law, because you earlier claimed your innocence, then you're not even entitled to a hearing. And the Sixth Circuit reverses and says, no, he was – it is possible that he could have accepted an Alford plea, so that is not always as a matter of law dispositive. And of course the defendant would maintain his innocence right up until the point he pleads guilty. Otherwise, he could never plead guilty. And the government doesn't dispute the logic of that case. But in this case, the district court held an evidentiary hearing. So that's the legal difference. And the factual difference is Mr. Scribner maintained his innocence in the post-conviction context. So in his own 2255, in the reply to the government's brief, he says, whether I am guilty or innocent is not the point. And then he comes in before the magistrate judge and says, I never had the intent to aid in a bet. And at the district court hearing, the hearing that matters, as Judge Barksdale pointed out, the government cross-examined him with his prior statements from the earlier hearing and put before the district court the idea that even at the time you would think that Mr. Scribner would have come in and said, I had the guilty intent, he did not admit his guilty intent then. So this is a question of fact for the district court to resolve. This isn't a question of whether the district court erred as a matter of law. So our argument is that Griffin is completely inabsent on that point. I do want to touch briefly on the district court's factual finding was amply supported by the record. And, Judge Costa, you really hit on this. Mr. Scribner claimed all along that he was only in this conspiracy for about 24 hours, or excuse me, not in the conspiracy, but involved with this group for about 24 hours. And so he had a very viable defense to these charges. His counsel testified at the post-conviction evidentiary hearing that sometimes she has clients come to her and say, I want to go to trial no matter what. And she says, if you want to try the case, we'll try the case. But that was not the case with Mr. Scribner. Mr. Scribner had what she called a triable case. And exactly as Judge Costa pointed out, Mr. Scribner, after trial, was found not guilty on the conspiracy count, which would have increased his exposure. And he was also, the district judge gave him a lesser included instruction on simple possession without the intent to distribute. So this case really turned on whether Mr. Scribner had that intent. And the district court did not err, as a matter of fact, in concluding that Mr. Scribner was not willing to accept that plea. It seems to me, I mean, you have to speculate. It's a tough position for a trial judge to be in to decide what would have happened in this counterfactual universe. It seems to me there's arguments both sides can make about whether he would have accepted the plea or not, which in that sense it probably helps you given the standard of review. But if there's good arguments on both sides, I mean, all he needs to show is a reasonable probability, which we know that's less than preponderance, the Supreme Court has said. I mean, so if there's good arguments on both sides, why isn't there at least a reasonable probability, not more likely than not, but at least a decent likelihood that he would have taken the deal if he'd known the guidelines? It's a difficult position district courts are charged with. They're having to prognosticate and guess as a matter of fact. But once they hold a hearing and determine as a matter of fact, then I don't think it's for courts of review to come back and say, well, as a matter of fact, there was some reason that you could have accepted, so as a matter of law, therefore you get to the reasonable probability standard. The district court heard the witnesses live and decided as a matter of fact that there was no evidence in the record other than Mr. Scribner's late-to-the-game protestation in the final evidentiary hearing that he would have accepted this plea that he thought he was guilty at the time, and the district court was free to reject that after hearing the witnesses live, and district courts are charged with making those difficult calls, and the standard of review for those calls is clear error. If there are no further questions, I'd be happy to cede my balance of time back to the court. Oh, one more thing before I sit down. My apologies. On the last page of my brief, I cited Foster. It's a Seventh Circuit case from 2013. And Foster is instructive here because it's one of the few cases I've seen where a court actually reviews what a district court has done after an evidentiary hearing. And Foster says that the district court's factual findings are entitled to exceptional deference. The apology comes in as I miscited Foster. So it's 735 F3rd 561. I miscited by one number in my brief, so I just wanted to apologize to the court on that point. All right. Thank you. Thank you. Back to you, Mr. Ross. Just briefly, Your Honors. One of the things that came out of the district court evidentiary hearing was the issue of aiding and abetting and what was told and whether or not Mr. Scribner understood what aiding and abetting was. I think it was clear that prior to trial, he did not understand what the full effect of aiding and abetting was. And there was an issue in regards to trial counsel's testimony where she says that the issue with Mr. Scribner and where we came down on taking the case to trial was that the distribution was finished, and so that he was not aiding and abetting in the distribution because it was finished at the time he arrived and there was to be no distribution with that marijuana. That was from trial counsel. That's trial counsel counseling Mr. Scribner on what aiding and abetting is and when does it stop and you're not guilty here of aiding and abetting because it is stopped. And so Mr. Scribner maintains again, I mean, his innocence, and now he's got the encouragement, but the analysis from trial counsel that you're not guilty of this, right? The jury concluded otherwise. This court concluded otherwise, and the trial counsel admits at the evidentiary hearing that going through what Mr. Scribner testified at trial that he had done, that that meets the elements of aiding and abetting. And so he did accept what he did in essence was wrong, but he got, again, erroneous advice of counsel. Now, that didn't come out as a pleading, as an issue in the 2255. The only reason, and it wouldn't have because he wouldn't have known. But as you got into it, what the trial counsel was counseling and her analysis with Mr. Scribner was also erroneous at that same time, and that's something that the district court held onto and the government had held onto is he said that he didn't have the intent to distribute. He didn't have the intent to distribute. But trial counsel says that, hey, based on what you said that you did, based on what he says that he did, that a jury could find beyond a reasonable doubt the intent because the intent can be inferred. But the question was, was that ever explained to Mr. Scribner? And it wasn't. And so him going back to what he was looking at going to trial and factoring in his decision, based on what the trial counsel had told him in regards to aiding and abetting, there's only a seven-month difference, and he goes. The difference, had trial counsel told him he was facing 210 to 240 months if convicted, and based on this the jury could have found, based on the inference of intent as an element of the offense, then you're going to get convicted, you're going to get a lot of time. He didn't have that information to factor into his decision to make a knowing and intelligent decision whether or not to go to trial, based on this thing. You're saying she didn't talk to him about the elements of the offense before the trial they had? No. I'm not saying that she didn't talk to him about the elements of the offense, but it's how she applied the elements of the offense. In that section that I just read to you, this record site is 222, the last paragraph. The issue she said came down to, taking the case to trial, was that the distribution was finished, and so he was not aiding and abetting in the distribution. But what he testified as to what he was doing is aiding and abetting that offense, and that's what the jury found, that's what the district court found, based on Mr. Scribner's own testimony. So the argument to the court is when you look at the factors that are involved in Mr. Scribner making his decision of whether or not to go to trial, the district court, I believe, erred in it coming to its conclusions because of the weight that it put on the fact of his innocence pre-trial, and he's afforded that opportunity to do that. And as Judge Costa pointed out, is there a reasonable probability that the outcome would have been different? I'd argue absolutely, absolutely, in this case. And we'd ask the court to vacate Mr. Scribner's sentence, remand the case back to the district court, and allow him to take that plea in regards to where his sentence would have been less, 151 to 188 months. All right, let me ask you, just before you back out, Counsel Opposite mentioned this Foster case. You familiar with it? He says that one concerned a review after there had been an evidentiary hearing, which we have here. Do you have any response on it? Your Honor, I understand that that case says that there's great deference to the district court's findings. However, I would argue that this case, the district court erred in its findings based on its reasoning and what it used as a matter of law to make its final determination. Well, the question, you know, we say generally, you know, we would reverse an error of fact if the facts of determination is essentially anchored to an error of law. Otherwise, you know, we have great deference. So I'm trying to listen carefully, and I hear you framing it, saying it's an error of law. So my question is, you focus on the district court's reasoning, so what's your best case that accentuates the point of it being error as a matter of law when looking through the cognitive process of the trial court? I mean, it somehow stays factual. You follow what I'm saying? I mean, like— I do, Your Honor, and I can't point to a case necessarily, but I can argue from cases, and I would argue a case. And I just go back to Griffin. I mean, I think the logic and the reasoning of Griffin, that you can't hold that against a defendant, should permeate throughout the process and the proceedings. Okay. Let me just ask this quickly, Judge Stewart. You urge us to remand, to allow him to take the plea, but in your brief you say remand the case for new trial proceedings. And that is my error, Your Honor. Sir? That would be an error on my part, Your Honor. In regards to if you vacate, he gets put back into a new trial, but the idea is that he would be afforded the opportunity to accept the plea agreement that was originally offered to him, and that's to count three, with the dismissal of count one. All right. All right. Mr. Ross, you're court-appointed counsel? Yes, Your Honor. All right. The Court appreciates your service in this case as court-appointed counsel. It's a robust issue here, and so we appreciate you and all our court-appointed counsel that take these cases on, not only the brief, but to come and provide oral argument and help the case immensely with answering our questions and figuring it out. So we thank you on behalf of the panel, but the Court also. Thank you, Judge. All right. Thank you, Mr. Brentshaw, from the government. Appreciate it.